IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DONNOAL VASSER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:03-cv-678-JPG |
| ) | |
| A. WYDECK, M. HELD, K. BUSH, and J. ) | |
| VINEYARD, ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

This matter has been referred to Magistrate Judge Donald G. Wilkerson by District Judge J. Phil Gilbert pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the Motion for Summary Judgment filed by the Defendants, A. Wydeck, M. Held, K. Bush, and J. Vineyard, on December 12, 2005 (Doc. 28).  For the reasons set forth below, it is **RECOMMENDED** that the Motion for Summary Judgment be **GRANTED**, that **JUDGMENT** be entered in favor of the Defendants, and that the Court adopt the following findings of fact and conclusions of law:

**FINDINGS OF FACT**

The plaintiff, Donnoal O. Vasser, was an inmate at Big Muddy River Correctional Center (hereinafter "BMRCC") and shared a cell with Enis Goodson during the time period when the events giving rise to this action took place (10/28/05 - Donnoal O. Vasser Deposition (hereinafter "Vasser Dep.") (Doc. 29) Def. Ex. 1, p. 4).  The named defendants in this action were all employed as correctional officers at BMRCC during the same period.

On December 17, 2002, the plaintiff and his cellmate had a physical altercation in the cell they shared (Disciplinary Report (hereinafter "Disc. Rep.") (Doc. 1) Pl. Ex. 6).  The plaintiff

sustained minor injuries in the altercation (Inmate Injury Report (Doc. 1) Pl. Ex. 4). In response to the altercation, BMRCC assessed disciplinary penalties against the plaintiff (Disc. Rep.). Prior to the altercation, between October 15, 2002 and November 14, 2002, plaintiff submitted to BMRCC's Housing Placement Office four written requests for a cell change (Inmate Requests (hereinafter "Inmate Req.")(Doc. 1) Pl. Ex. 5). Because the plaintiff's allegations derive primarily from BMRCC's handling of these requests, the text of the cell change requests is provided below:

> October 15, 2002: Dear placement supervisor or C/O Held. I'm requesting for a cell change because my cellmate and I don't get along. And I'm in fear that something may occur between us.

> October 22, 2002: To request a cell change ASAP please. My cellmate inmate Goodson #B-41477 and I are having some very serious live in differences. Could whom my issues may be with please look into this matter. It would really be appreciated.

> October 30, 2002: For myself or cellie to be moved please. This is my third time writing to you's informing you's of the situation I'm in with my cellie. Please acknowledge.

> November 14, 2002: A cell change. To whom my issues may be with. I am having problems living with resident Goodson, and would like to be separated ASAP please to avoid conflict. Please look closely into this matter. Thank you kindly for any considerations.

(Inmate Req., Pl. Ex. 5, pp. 1-4) (edited as to punctuation, but not as to substance). The record leaves the impression that BMRCC's correctional officers took no action to bring about the plaintiff's desired cell change (10/20/03 Complaint (hereinafter "Compl.") (Doc. 1) p. 5). The plaintiff alleges that the defendants's failure to respond to the cell change requests

amounted to a violation his Eighth Amendment right to protection from violence at the hands of fellow inmates (Compl. pp. 5, 6). More specifically, the plaintiff alleges that the December 17th altercation could have been prevented if the defendants had heeded his prior requests to be separated from his cellmate (Compl. p. 6).

## CONCLUSIONS OF LAW

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Haefling v. United Parcel Service, Inc., 169 F.3d 494, 497 (7th Cir. 1999); Dempsey v. Atchison, Topeka and Santa Fe Railway Company, 16 F.3d 832, 836 (7th Cir. 1994). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); Miller v. Borden, Inc., 168 F.3d 308, 312 (7th Cir. 1999). A fact is material if it is outcome determinative under applicable law. Hardin v. S.C. Johnson & Son, Inc., 167 F.3d 340, 344 (7th Cir. 1999); Smith v. Severn, 129 F.3d 419, 427 (7th Cir. 1997); Estate of Stevens v. City of Green Bay, 105 F.3d 1169, 1173 (7th Cir. 1997). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts. Plair v. E.J. Brach & Sons, Incorporated, 105 F.3d 343, 346 (7th Cir. 1997); Lawshe v. Simpson, 16 F.3d 1475, 1478 (7th Cir. 1994); Dempsey, 16 F.3d at 836. Finally, summary judgment "will not be defeated simply because motive or intent are involved." Roger v. Yellow Freight Systems, Inc., 21 F.3d 146, 148 (7th Cir. 1994). *See also* Miller, 168 F.3d at 312; Plair, 105 F.3d at 347; Cf.

Hong v. Children's Memorial Hospital, 993 F.2d 1257, 1261 (7th Cir. 1993); Lac Du Flambeau Indians v. Stop Treaty Abuse-Wisconsin, Inc., 991 F.2d 1249, 1258 (7th Cir. 1993).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
>
> Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986);

*See also*: Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 273 (1986); Haefling, 169 F.3d at 497-98; Sybron Transition Corporation v. Security Insurance Company of Hartford, 107 F.3d 1250, 1255 (7th Cir. 1997); Weinberger v. State of Wisconsin, 105 F.3d 1182, 1188 (7th Cir. 1997).

It is well-established in the Seventh Circuit that the Eighth Amendment requires prison officials "to protect prisoners from violence at the hands of other prisoners." Langston v. Peters, 100 F.3d 1235, 1237 (7th Cir. 1996) (quoting Farmer v. Brennan, 511 U.S. 825, 833, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994)). "However, every injury suffered by one prisoner at the hands of another does not constitute a violation ... Rather, an Eighth Amendment violation exists

only if *deliberate indifference* by prison officials effectively condones the attack by allowing it to happen[.]" Id. (emphasis added) (internal citations omitted). Deliberate indifference in the prison context entails: "First, the danger to the inmate must be objectively serious, posing a substantial risk of serious harm. Second, the prison official must have a sufficiently culpable state of mind-one of deliberate indifference to inmate health or safety." Id. (internal quotation marks omitted). Accordingly, in order for a plaintiff to establish the liability of a prison official, he must show "that the official knew of the risk and did nothing." Pope v. Shafer, 86 F.3d 90, 92 (7th Cir. 1996) ("In a failure to protect case...the plaintiff must introduce evidence tending to show that the prison official(s) were aware of a *specific, impending and substantial threat* to his safety.") (emphasis added).

     In the instant case, the plaintiff avers that the defendants violated the Eighth Amendment by not granting his cell change requests. The plaintiff asserts that having to share a cell with an inmate that he did not get along with created a "substantial risk of serious harm." Id. The plaintiff alleges that the December 17th altercation was a direct result of the defendants not having responded to his cell change requests. He calls particular attention to the fact that he submitted four unheeded requests to be separated from his cellmate.

     The defendants contend that the requests for a cell change did not leave any of them with the impression that the plaintiff was facing a substantial threat to his own safety. The defendants also point out that the plaintiff shunned available administrative procedures for notifying prison officials of a perceived or actual risk of physical harm (Vasser Dep. p. 66). It is undisputed that the plaintiff could have sought protection by resorting to any of these administrative procedures, which include the filing of a grievance outlining the specific threat, the naming the estranged

prisoner as an "enemy," or the acceptance of isolation from the general population to abate any immediate threat to his safety (Vasser Dep. pp. 65, 66).

Viewing the facts in the light most favorable to the non-moving party, this Court accepts the plaintiff's contention that he submitted the cell change requests and received no formal response from BMRCC correctional officers. However, even assuming that each of the defendants were actually aware that the plaintiff was not getting along with his cellmate, such an awareness would not have given the defendants notice of an "impending and substantial threat" to plaintiff's safety. Langston, 100 F.3d at 1237.

The operative fact weighing against the plaintiff is that the language in the cell change requests more aptly conveyed the plaintiff's desire to be moved away from an unpleasant cellmate than it did to convey that he felt threatened (Inmate Req., Ex. 5, p. 1). The Seventh Circuit has held that a prisoner's communication to correctional officers that he does not "get along" with his cellmate will not alone suffice in showing that correctional officers were "deliberately indifferent" to the prisoner's safety. See, generally, Lindell v. Houser, 442 F.3d 1033 (7th Cir. 2006) (granting summary judgment against a prisoner, a white supremacist, who complained to correctional officers that he did not "get along" with his black cellmate before his cellmate ultimately attacked him). Likewise, the plaintiff's utilization of cell change requests rather than other administrative procedures, e.g., enemies list and grievance report, supports the inference that he desired foremost to be housed with someone he would get along with, as opposed to desiring protection from a specific threat of violence. Moreover, the plaintiff admitted that he acted in concert with his cellmate to conceal from the correctional officers how contentious relations had become between the two (Vasser Dep. pp. 39, 40). The plaintiff

cannot logically expect this Court to presume, nor would a reasonable jury presume, the defendants were aware of a hazardous situation that the plaintiff admittedly undertook to hide from them.  In light of the foregoing, the plaintiff has failed to meet his burden of showing the defendants were aware of a risk to his safety.  Because defendant awareness of a threat is an indispensable requirement in a showing of deliberate indifference, a grant of defendants's motion for summary judgment is appropriate as a matter of law.

### CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that the Motion for Summary Judgment filed by the Defendants, A. Wydeck, M. Held, K. Bush, and J. Vineyard , on December 12, 2005 be **GRANTED** (Doc. 28), that **JUDGMENT** be entered for the Defendants, and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties shall have ten (10) days after service of this Recommendation to file written objections thereto.  The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals.  Snyder v. Nolen, 380 F.3d 279, 284 (7th Cir. 2004); United States v. Hernandez-Rivas, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: August 31, 2006**

                                                           *s/ Donald G. Wilkerson*
                                                         **DONALD G. WILKERSON**
                                                         **United States Magistrate Judge**